at all. Thank you so much. Ms. Abata, you have reserved two minutes for rebuttal, and you can begin whenever you're ready. Yes, Your Honor. Thank you. May it please the Court, my name is Amanda Abata, and I represent the appellants. This Court should reverse the District Court's decision because Jin's arrest was supported by probable cause, or at a minimum, arguable probable cause. Weren't there fact questions to be decided with respect to this qualified immunity issue? No, Your Honor. The District Court found that there were fact questions. Yes, Your Honor, but we would submit that they weren't actually factual questions, because NYPD officers were dispatched after a 911 call. The 911 dispatch report identified the 911 caller as the victim's son, stated that the victim was attacked with an umbrella, sustained injuries. Was the 911 caller someone who was present at the altercation that was reported? It was objectively, it's unclear in the record, but it was objectively reasoned. That's what we call a fact question, unclear in the record. Fair enough. If there are fact questions that the District Court identified in denying this motion for summary judgment on the basis of qualified immunity, why is that decision a final decision that's available? It's not a final decision that they're not entitled to qualified immunity. It's a decision that their entitlement will depend on the resolution of fact questions. Fair enough, Your Honor, but we submit that the facts do not support that decision. Because with regards to the factors when the police arrived, as previously stated, the 911 dispatch report identified the caller as the victim's son, stated that the victim was attacked with an umbrella, sustained injuries. But the caller was, the telephone number, the telephone from which the 911 call was made was identified as being at a different place, was it not? Your Honor, it was- Or at least there's a question. Your Honor, we submit that there is no question of fact, because one, according to Gin, the 911, I'm sorry, the phone number that called 911 was attached to a massage parlor. But one, there's no reason to believe that the police knew or had reason to suspect that when they arrived on the scene, that the number was associated with the massage parlor. And as a fact that wasn't known to the officers, it's irrelevant to the question of probable cause. Okay, so what I think would help is for you to tell us precisely which facts that Gin does not dispute you think are sufficient to establish probable cause. So at least what I heard you say was that a 911 call was made. Yes, Your Honor. So that's one. A 911- That a 911, and I'm assuming you agree that that's not enough for probable cause. Well- So what are the other, and very, very succinctly, the ones that you think by itself, undisputed, would be enough for us to determine that there was sufficient probable cause for you to get summary judgment? There was the 911 call, Your Honor. There was the victim's injuries, which corroborated to the 911 dispatch report, which- Okay, a visible injury, let's be concise. So you think there was a visible injury? There were visible injuries, at least a laceration and some bruises, scratches. There was the description of Gin as the assailant on site, and her description and relationship corresponding to that which was in the dispatch report. Okay, she doesn't dispute, I thought she disputed that. Well, she disputes that she's the assailant, but she was- Okay, no, no, no, let's make this easy for us. Tell us which ones she does not dispute that you think is enough. I have a 911, I have a visible injury, what else? Her presence on the scene and her admittance that there was some sort of altercation with the victim. Okay, her presence and her admission that there was an altercation. Yes. Those four things are not disputed and you think are sufficient enough for probable cause. Well, given the totality of the circumstances- No, we're not. We're dealing with what is undisputed that she would concede and is that sufficient. Okay, you think those four things, that's all you've got for us. I thought in the video the victim is demonstrating with the umbrella how he was hit. Right, I thought there were a few more. No, no, no, that's fair, Your Honor. Isn't that pretty important?  You said undisputed. It is, the victim does demonstrate the assault with the umbrella. Well, that's undisputed, it's on the video, right? But Gin disputes that she struck- I know, but in terms of what the police officers- Okay, so we've got 911 call, visible injury, the presence of Ms. Gin, and the presence of the umbrella. The presence of the umbrella and the victim's demonstration of the attack on his forearm. I think those five things are enough. Okay. That is helpful. Yes. Collectively, these facts- Well, the district court suggested that was enough, too, right? Didn't he say had these facts occurred under differing circumstances, a probable cause determination may have been more certain? And then he discounted all those because it was a domestic violence incident, right? Precisely, Your Honor. The district court did find that there was probable cause but for the fact that this occurred in the context of a domestic incident. That in the context of a domestic violence incident, that someone claiming to be a victim of domestic violence, that the usual rule that a police officer can rely on that unless there's something to question their veracity, that the district court suggested that just because it's a domestic violence incident, that that's reason enough to question their veracity where a police officer should do more. You're right, Your Honor. This court has never said that, and you said precisely the opposite. In Lee v. Sandberg, where you said it was objectively reasonable for law enforcement officers to believe that probable cause existed in a case that involved a domestic dispute, and in fact found that officers are entitled to qualified immunity given the extraordinarily difficult judgment decisions that law enforcement officers must make in domestic violence situations. I also want to jump to the fact that adding to sort of the totality of circumstances, which would qualify the officers for qualified immunity, the NYPD officers were not required to investigate Jin's account of the events of her alleged injuries. To start, in contrast to the visible laceration and bruises that were on the victim, Jin admitted that- investigation. Like, given the totality of the circumstances and a 92-year-old woman, I'm sorry, a 92-pound woman, and a lot of people on the other side, like, how far are you willing to take the fact that they have no- that an officer has no obligation to conduct some- Well, I'm certainly willing to take it in this case where the circumstances, which is the police discovered when they showed up to the scene, corresponded to virtually the same thing that was on the dispatch report. And when they got there, the only person saying that Jin was not the assailant obviously was Jin herself. And to support that, she cited two neighbors who were not physically present. She said that the neighbors- she told the neighbors to call 911. They didn't call 911. She herself, although she was present and had her cell phone, did not call 911. In fact, even after the fact in the litigation, there's nothing in the record, just no affidavits from the neighbors to support that, you know, they would have told a different story to that which the victim's son told. And there were also, a contrast to her allegedly hidden injuries, there were the visible injuries on the victim. So what do you think is the case law that best supports you concluding that they didn't need to talk to the next-door neighbors? Well, there's the Rasuti- I asked for the best one. I'm sorry? I'm sorry, Your Honor? There's Rasuti versus New York City Transit Authority, which rejected the argument that the arresting officer should have made further inquiries and interviewed witnesses at the scene. There's Curley versus the village of Suffern, which holds that when a purported assault victim who's visibly injured told the police that Curley had assaulted him, the officer had probable cause to arrest despite Curley's conflicting account. Right, no, the question is whether or not there are circumstances in which the officer would have had a duty to investigate or at least ask a few more questions, and why this isn't that scenario. It isn't? Or if you were taking the position that they would never have the duty to try to figure out what's going on. I mean, you're asking for a totality of circumstances, right? And certainly neighbors and someone saying, please go interview them would be part of the totality, right? Fair, but everything else, and that's, yes, that coming from Jin is the only thing, though, that weighs against the totality of the circumstances supporting the probable cause to arrest, because once again, the neighbors weren't present. No, Jin herself didn't call 911. The neighbors came out, for example, without the officer doing an interview or trying to find them. If the neighbors came out during this interaction and said, we saw the whole thing, he hit her, that would be problematic, right? Then they might have to do more. Then they might have to try to figure out. Well, at most it would just present a conflicting account, which once again doesn't on its own establish probable cause, because the police officers there aren't necessarily tasked with your Honor's duty, like weighing the evidence. Their job is to apprehend people who are accused of wrongdoing if the totality of the circumstances sort of supports the veracity of the claim that there was. Should they know whether the person who called 911 was present at the event so that person had firsthand knowledge? Your Honor, I would submit that their knowing it isn't necessarily relevant if it was objectively reasonable to believe. The entire premise of their defense based on what they knew? Well, Your Honor, if you're talking about the fact that the allegation that the victim's son wasn't present at the scene of the attack, one, it was reasonable for the officers to believe that the man who opened the door to them, identified himself as the victim's son, was also the 911 caller who identified him, who called and identified himself as the victim's son, especially since there's no evidence that anyone at the scene said the son was not present during the fight. But there's evidence that the call was not made from the apartment? Well, there's evidence the number was attached to a massage parlor, not that it was attached to a landline at another location versus a... Is there evidence in the record that it was attached to a massage parlor? There's not even evidence. It's an allegation. It's a footnote. Yeah, I didn't... I was going to ask your adversary about that, where that is in the record. Yeah, and finally, I'll just end on this. Plus, there's Officer Giganti's unambiguous testimony that the son was the 911 caller. All right. Thank you. Thank you, Your Honor. Good morning, Your Honors. Mike Curran, Flushing, New York, for Ms. Guo Hua Jin. Ms. Jin, by the way, is Korean. She's not Chinese, although that's what the police put in the records. She's a Korean from northwestern China, where there's a large body of Koreans who immigrated from Korea. Mr. Curran, let me ask you to comment. I'm going to quote you a line from a Tenth Circuit case, United States v. Patin. I want you to tell me whether you think this is correct or incorrect. They said in that case, we find no basis for the suggestion that domestic violence victims are undeserving of the presumption of veracity, accorded other victim witnesses. Do you agree with that or do you disagree with that? Your Honor, what I suggest respectfully is that Judge Block was not focused- We'll get to Judge Block in a second. As a matter of law, is that correct or incorrect, that domestic violence victims are not undeserving of the same presumption that every other victim of a crime gets when a police officer shows up? That we should not have a rule where, because of the nature, because it's a domestic violence situation, that they have to show more than another victim of crime would? I believe that you should look further if there's a- So you disagree with that? Disagree. All right. But we've said, I'm going to read you a summary order, and there's a lot of these, but Kandanskaya, I'm pronouncing it wrong probably, it's a husband and wife domestic violence situation, that Kandanskaya and her husband were experiencing marital discord, did not require the officers to discount the husband's account. So we've said the same thing, at least in the summary order, that the Tenth Circuit- Wouldn't it be a pretty dangerous rule of law if we told police officers, look, when it's a domestic violence situation and a victim is claiming an injury and even shows an injury, you have to do more investigation, you have to corroborate that before you can presume that it's true for purposes of probable cause. Wouldn't that be a pretty dangerous rule of law? Well, Honor, in this situation, if we can look at this situation, one of the cops, Vasquez, says on the video, this is not a domestic violence situation. He says that. So what- Judge Block said, I read the line- He said- He said, Judge Block said, he said an 9-1-1 call, Scratch doesn't want to complain, it's armed, the account was relayed, and he said under other circumstances, a probable cause determination would have been more certain, but this is domestic violence. And he says later in the decision that because it's the relational dynamic between the father and Jen and the brother-in-law, that it's deserving of less credit. And I'm troubled by that, as you can tell. Well, Your Honor, again, I apologize, but I believe he was focusing on genuine issues of material fact. He was not focusing so much on- I think that's more dicta. If there's a criminal case, I could give you 50 cases. If there's a 9-1-1 call, and Judge Kears, there's an issue here whether or not it's an eyewitness or not. But let's put that aside for a moment. It's a 9-1-1 call, a victim or an eyewitness reports the crime in person to the police officer, says an assault happened. Even apart from showing the injury, the case law says that's enough for probable cause. But here we actually have the showing of the injury. So there's dozens and dozens of cases that would say, if those are the undisputed facts, if there's not anything to undermine the veracity of the victim, the officers have probable cause. Forget about the arguable probable cause. They have probable cause to arrest that alleged person committing the act of domestic violence. You know those cases, right? You know those cases. Yes, I've seen them, but Your Honor- That would take it out of those cases is that potentially the person who made the 9-1-1 call and was present did not witness it. Yes. So that would take it out of line. But I would suggest to you, and let me finish, that if the victim is standing there and while the person, whether they're an eyewitness or not, the person who made the 9-1-1 call is recounting what happened in terms of the assault, and the victim is there demonstrating by pointing to his arm to the injury and demonstrating with the umbrella the exact, the account that the person who made the 9-1-1 call is describing, that that's essentially the equivalent of the victim saying that's what happened, even if the victim didn't speak. Your Honor, we suggest that that was staged. The reason we say that is that, and also when you open the door, when you do a stage, I'm suggesting to you that when the victim- He didn't understand English. When the victim makes the motion to the umbrella, that's the equivalent, even though the victim didn't speak in the context of the victim saying that's what happened. He's describing to you that's what happened. Your Honor, the son spoke in English. How did the victim know how to time that? Maybe the victim understands some English. I don't know. Yes. The issue here is we're being asked to make law, right? Yes. And whether or not something was staged in this instance or not staged in the instance, the officers are not fact-finders. The officers, they're the ones that are having to respond to whether or not they have probable cause. So the question, I think, for us is why do those things that you do not dispute, the fact that a 9-1-1 was called, the fact that there was a visible injury, the presence of your client, the fact that there was an enough probable cause? Because, Your Honor, the cops changed the facts. When he opened the door, the ex-brother-in-law said he has little bruise. He didn't say anything about lacerations, and that's nowhere in any of his testimony. So you're actually disputing the visible injury? Yes, absolutely. In fact, Officer Gigante added those injuries to her report, which the victim refused to sign. In the record, you'll see he did not sign the incident report. The domestic violence incident report was not signed by the victim. Didn't sign it. Refused to sign it. Okay, so you dispute the presence of a visible injury. Part of it. He showed a little bruise next to his elbow or something. I'm sorry. Wait, what? The son said he had a little bruise, and he pointed to the crook of his arm. Nothing about the lacerations. That was all added by the cops. Okay, so you don't dispute that there was a 911 call. You do not dispute that there was your client presence, and you do not dispute that there was the umbrella. Yes. And you do not dispute that there was a demonstration. Well, the umbrella was not my client's. Again, we feel that was manufactured. That was just something in the apartment. No, I agree that you think it was staged. You think it was staged to set up your client. Yes. But you at least agree that there were those four things. Yes. And that does not support probable cause because why? Because, well, as I said, there was staged, but also there were available third-party impartial witnesses like one foot. What is the case that says, or that bolsters your position, that the officer had an obligation to interview these neighbors who were not present? What is the best argument? Well, I was using the judge's comments. He essentially said something like that in his opinion. He said, and it's about a sighting, over and over again, if you have probable cause, so if those things establish probable cause, the law is an arrestee's protestation of innocence does not vitiate probable cause. You don't have to resolve conflicting accounts. There is no case ever in the Second Circuit where if there is probable cause, based upon those undisputed facts that we have told an officer, you have to conduct interviews. You have to interview some other people. There's no case where we have ever required a police officer to interview other people if what is before him or her establishes probable cause, right? Your Honor, I'm stating the police embellished the facts. And not only that, Officer Vasquez went back after they left and took photos of his arm to bolster the claim about the lacerations. It's right in the record. It's in the videos. So what are you saying about that, then? That they made additional injuries on his arm? They put injuries on his arm? Is that what you're saying? No, they added lacerations. They added a claim of lacerations. That was not in anything that they were told by the victim or his son. There's definitely an injury on the arm. You can see it on the video. The tiny bruise is what the son emphasized. He didn't say anything about lacerations. How much of an injury do you need? Well, you can barely see the bruise. The father was a wild guy. He was a bar fighter. So you understand, that's what my client told me. So he wasn't a simple guy. He was a working, rough, blue-collar guy. Those injuries could have been from anything, whatever they were. Injuries, wounds. And your client had the charges dropped, right? She did. Right. Whether or not she did it, she didn't do it, she's guilty, she's not at the stage, it's not. The question for us is whether or not there was probable cause. I understand. And so I'm interested in hearing why you think those four things that you agree are not disputed, and you do dispute the lacerations, so the list doesn't have five, it has four. Why that doesn't support? Well, the sergeant came to the door in a two-and-a-half-minute inquiry. After, like, one minute, he said, she's going to be arrested. He didn't really ascertain what was going on. And it's pretty clear that the son was not present. Everything he was telling them, we don't know. Incidentally, if you look at the video. The thing about the massage parlor, where is that in the record, that that phone number goes to a massage parlor? It's in the brief and what have you. In the brief? You know, but. The brief doesn't count. Can you tell me how that affects, though, how that matters for probable cause, like where it was? Where the call came from, you mean? Yeah. How does that affect probable cause? The officers only know that a 911 call was made, right? Well, we already stated that the son thought he was culpable. If you look at A356, the child's big black eye, because that son had a car accident that caused the black eye. So we feel that the son was probably trying to cover things up, whatever it was. And when my client came there and they had that altercation, they wanted to shift things away from the family to her. And because the police. That may be true, but why the officers didn't do what their job was? Because when I had the deposition of Sergeant Fernandez, I asked him what the name of the witness was. He didn't know it. He had many facts. If you look at that, it's in the brief in the record. He didn't know anything about this witness and what had happened, whether it was real or what it wasn't. He never evaluated what he was told. He just said, I'm going to arrest her. And that's it. I mean, like, within minutes. One minute, actually, not even minutes. So I believe, respectfully, Your Honors, I believe that our situation is this. If you have probable cause, you have to have enough support for the probable cause. It can't just be some surface random facts that make it easy for police to arrest people who didn't do anything. I don't think that's the mission of our police force. Our mission of the police force is when they're presented with a domestic violence incident and they have someone who's claiming to be a victim of domestic violence, for them to walk away or to conduct additional interviewing before they arrest somebody would be problematic, right? Maybe they're trained that if they have someone who's claiming to be a victim of domestic violence and they have no reason to question the veracity of that, that they make an arrest. They didn't process it like a domestic violence case. All right. Thank you. Thank you, Your Honor. Honors. I'm sorry. Ms. Zabata, you have two minutes for rebuttal. Yes, Your Honor. I just want to make a few quick points. One, as Your Honor pointed out rightfully, so the laceration was openly visible in the body camera footage. So I just want to say that for the record. And also— I'm sorry. I didn't hear it. Can you repeat, please? I'm sorry. The laceration, it's visible on the body camera footage from various police officers when they arrived at the scene. So despite whatever he's claiming that the victim pointed to, the laceration was visible. With regards to the domestic violence in the son's account, there's just— I have to go back to that because essentially, as Judge Bianco's been pointing out, to hold a different standard for domestic violence situations is troubling from a common sense and public policy perspective. Because if you take it to its logical conclusion, it's saying that conflicting accounts and relational dynamics and lacking an unbiased— Well, right. But I think the problem here is, and I think his client would say, that she was the one that was the witness to the domestic violence. She was worried about her kid. The family ganged up on her. She was not in a position to manage the situation in a calm way. And then she's the one that got arrested when they were the ones that were the aggressor. Right? So the question—the problem that we have is that we need to create law that works in every scenario. What kind of training do your officers get? Your Honor, there's no—I don't have information on that within the record. But I just wanted to say, though, based on the standards of what constitutes probable cause, and at least for arguable probable cause for qualified immunity, the standard is whether it was objectively reasonable. It would have been better for the police officer to ask the brother-in-law, did you witness this? That would have been a pretty basic thing. When the brother-in-law was describing what happened, instead of relying on the victim to demonstrate it, assuming the victim couldn't recount it himself because of language issues, it would have—certainly an officer could have very easily said, were you there when it happened? Your Honor, that might be best practices, but I would submit that the victim—the call came from the victim's son. And when they arrived, they encountered someone who introduced himself as the victim's son. And there's no allegation— I know, but it's important whether someone who makes the 911 call sees it, or is just reporting something someone else told them. That's kind of important, right? Fair enough. But nobody—again, it's about based, I guess, like the circumstances they encountered. Was it objectively reasonable? His story tallied with the dispatch report, which tallied with what they encountered at the scene. And there's no one at the scene, including Jin, who said that the son didn't witness what happened. That's only an allegation that came much later after the fact. And therefore, as a factor that wasn't decipherable, I guess, at the scene, I would submit it doesn't relate to probable cause. Thank you. One last thing. Y'all went to camp, right, and it wasn't successful? Yes, Your Honor. Okay. Is there any reason to think that revisiting it might be successful? Camp? I don't think we got it. The mediation—the court mediation program. I think that would have been a good idea, but we never got it. My record suggests that. Is that right? Do you— Your Honor, I have no authority to do anything with regards to mediation. But do you know if you all, in fact, went to camp? I know that we went, yes. You went to camp. And it was unsuccessful, yes. Would you represent that you and your client would proceed in good faith if we ordered you to go? We've been proceeding in good faith, Your Honor, with regards to the camp proceedings. Thank you. Thank you. Time reserved for decision. Have a good day. Thank you.